# IN RE ISMAEL MOSCOSO, Petitioner.

San Juan, Criminal, No. 3073 A.

Opinion filed February 1, 1923.

*Mr. Henry G. Molina,* attorney for petitioner.

*Mr. O. B. Frazer,* amicus curiæ.

*Mr. Ira K. Wells,* United States District Attorney, for the Acting Federal Prohibition Director.

ODLIN, Judge, delivered the following opinion:

At the outset of this opinion it is proper that commendation be given to the respective counsel for their unusual study and very elaborate discussion of what really, upon analysis, appears to be an extremely simple matter. The court has been favored not only with an extended brief embodying great research by the counsel for the petitioner, but also a second brief in sup-

port of the petition filed by Mr. O. B. Frazer as amicus. curiæ after a request presented to the court by the last-named gentleman that he might express his views, he being interested in the questions supposed to be involved. The court has also read with interest and care the very extensive brief prepared by the United States district attorney and his assistant in support of the demurrer filed by them to the petition.

The petition itself was filed on December 22, 1922, at which time the acting Federal prohibition director for Porto Rico was Mr. Ovid Jones. On the 2d day of January, 1923, a demurrer was filed by the United States district attorney on behalf of Mr. John T. Barrett, who at that time was acting Federal prohibition director for Porto Rico, and the same was argued orally by counsel on January 6, 1923, at which time it was agreed that the name of Mr. Barrett should be substituted for that of Mr. Jones in all these proceedings.

The petition recites the making of a certain affidavit by one Bascarán for a search warrant in the month of December, 1922, shortly before the filing of the petition, and that at once a certain document was issued by the United States commissioner, purporting to authorize a search of certain premises in the city of San Juan. There then follows an allegation that one of the deputy marshals, believing himself authorized by the said document supposed to be a search warrant, entered the dwelling house of petitioner on December 18, 1922, and took therefrom certain bottles which are alleged to be, and are described as, fourteen bottles of Johnny Walker whisky, five bottles of Hennessy brandy, and 4 gallons of alcohol; that these bottles were delivered by the marshal to the acting Federal prohibition director. The petition then goes on to recite cer-

tain facts in connection with the issuance of the search warrant, which made the action of the deputy marshal null and void.

I do not think it is necessary to recite these facts last referred to, because it was conceded during the argument that the search warrant was a nullity. The petitioner also sets forth that a complaint was sworn out against the petitioner before the United States commissioner by the said Bascarán, he being an assistant of the acting Federal prohibition director, alleging that the petitioner had violated the National Prohibition Act by unlawfully possessing the bottles and the 4 gallons of alcohol above referred to; that said complaint was instituted against the petitioner upon instructions of the acting Federal prohibition director, and that it is the intention of the latter to use these said bottles of whisky, brandy, and alcohol as evidence against petitioner to sustain the said accusation pending before the United States commissioner. There then follows the prayer of the petitioner, which is to the effect that the court shall hold that the seizure of the bottles of whisky, brandy, and alcohol in the residence of the petitioner, and the removal therefrom by the United States marshal, was an illegal act; and that therefore the acting Federal prohibition director should be ordered to deliver said bottles to the petitioner.

The petition is not verified by Mr. Moscoso, as I think it should be, but inasmuch as this point has not been raised by the counsel for the acting Federal prohibition director, I shall regard it as being waived.

Now we come to discuss the demurrer, which is based upon three grounds. First, that the petitioner does not set forth that he was the owner of the liquor which was seized; second, that

the petitioner does not allege that the place of seizure was the private dwelling *only* of the petitioner; and third, that the petitioner does not state that the liquor seized, even if owned by the petitioner, was lawfully acquired, possessed, or used.

The view that I take of this matter is that it is necessary to discuss only the first ground of the demurrer. Petitioner nowhere alleges that he owned the liquor which was seized. In my opinion this allegation is necessary in order to support a petition of this nature. Among the numerous cases which this court has examined, I see fit to base my ruling in this case upon one decision only. I refer to the case of Chicco & Hills v. United States, decided by the circuit court of appeals for the fourth circuit on October 21, 1922, reported in 284 Fed. 434. In this case two men, Chicco and Hills, were convicted of unlawfully possessing and transporting intoxicating liquors. All three of the judges concurred in the conviction of Hills and one of the judges thought the conviction should be confirmed as to Chicco, two judges deciding that the evidence against Chicco was such as to have required the granting of a new trial by the district court. All three members of the court agreed that where the search is claimed to be unlawful and then there follows a petition to have made a return of the property so seized, such petition, containing no allegation that the property belonged to the petitioner, should be denied. On page 436 the court uses the following language: "There was no allegation in either petition that the property which the court was thus asked to return was the property of either of petitioners, nor was it alleged in what respect its possession by the government affected the interests of the defendants."

Of course it is argued very properly by counsel for the pe-

titioner and by the amicus curiæ in the present case, that where there is a conflict of opinion between the circuit court. of appeals of the first circuit and the court of appeals of some other circuit, without any finally decisive ruling by the United States Supreme Court, it is my duty to follow and abide by the views of the judges of the first circuit. This is so clear as to need no discussion. And following this line of argument, it is submitted that I should disregard the opinion in the Chicco Case as being in conflict with the long and very carefully prepared opinion of the first circuit, Judge Anderson writing the opinion, the same being rendered exactly one week later than the decision of the fourth circuit, viz., on October 28, 1922, being the case of Giles v. United States, reported in 284 Fed. 208. I have read the opinion of Judge Anderson with great care, because it is binding upon me, and Giles had been convicted in the Federal court in New Hampshire of having alcohol in his possession for beverage purposes in violation of the National Prohibition Act, but the appellate court reversed the judgment, set aside the verdict, and remanded the case. It is distinctly held by Judge Anderson and his associates that the search warrant in the Giles Case was illegal, null, and void, and that Giles was entitled to the return of the liquor so taken on motion therefor.

This ruling is in direct conflict, so it seems to me, with the opinion of District Judge Clayton of Alabama in the case of United States v. Alexander, 278 Fed. 308. Judge Clayton was sitting at Jacksonville, Florida, in place of Judge Call who was ill, and he distinctly held that, although the search warrant was void liquor seized thereunder would not be returned on motion of the defendant, but because it was illegal

liquor it would be ordered destroyed. Of course I must disregard the decision of Judge Clayton and follow the decision in the Giles Case. A careful reading of the opinion of Judge Anderson does not show in direct, positive language that Giles owned or claimed to own the alcohol which had been unlawfully seized, but the opinion says this *in effect*. In the second paragraph of the decision (at page 209) Judge Anderson says that at the trial before the jury in New Hampshire it was undisputed that the Federal prohibition agent had seized a quantity of diluted alcohol in the month of August, 1921, in the drug store owned by the defendant, and that the government contended that this alcohol fell within the definition of intoxicating liquor. Giles himself admitted that the liquor was found in his drug store, but he contended that it was so medicated as to be unfit for beverage purposes, and that therefore his possession thereof after the expiration of the permit which had been issued to him did not violate the act of Congress. This issue of fact was left by the trial judge to the jury, and the verdict was against the defendant.

The opinion then goes on to hold that because the search warrant was null and void the alcohol could not properly be presented in evidence, and that the conviction must be set aside, and that Giles was entitled to the return of the liquor. I am obliged to hold that in the Giles Case it was *in effect* maintained by Giles himself that he was the owner of the liquor so unlawfully seized, because he admitted that he owned the drug store and that the liquor was there found. And there is not a word in the opinion of Judge Anderson to show that Giles ever claimed that any other person was the owner of the liquor. It is very clear to me that where a man owns

a drug store and liquor is found there and he asks for its return, being silent as to the ownership, the presumption is absolutely conclusive as to him that he is the owner himself.

Therefore, without discussing any of the other interesting questions submitted by counsel in the present case, whose zeal and energy and devotion to their respective clients could not have been greater if there were involved in this litigation a million dollars, I must hold that the first ground of demurrer is well taken, and the demurrer is sustained upon that one ground.

I will not, however, at this time order the destruction of the liquor, as Judge Clayton did in the Alexander Case, but I will give petitioner Moscoso an opportunity to amend his petition, provided that he does so on or before the 17th day of February, 1923, giving a copy thereof to the district attorney.

In conclusion I must call the attention of counsel for the petitioner to the fact that he is estopped to make the claim presented to the court in his oral argument that there was nothing in the petition showing that *unlawful* liquor had been in the possession of the petitioner. It is true that he is very careful in § 3 of his petition to say that certain bottles taken from the petitioner were *alleged* to be whisky, brandy, and alcohol, and that this operated as no admission that they actually were whisky, brandy, and alcohol. But when we come to the prayer we find that he asks the court to hold unlawful the seizure of the bottles *of* whisky, brandy, and alcohol, and to order the return thereof to the petitioner. It seems to me that this word *of* in the prayer is exactly equal to the word *containing;* hence it must follow that this petitioner did have in his possession certain whisky, certain brandy, and certain

alcohol. Whether or not it should be returned to him, I am not deciding at this time; but I am deciding that his petition is defective, and subject to demurrer as above.

To this ruling counsel for the petitioner excepts.